UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NURT DIMITRI JAMES GRANT,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE et al.,<br><br>Respondents. | CASE NO. 2:26-cv-02615-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Nurt Dimitri James Grant's petition for a writ of habeas corpus. Dkt. No. 4. For the reasons stated below, the Court grants in part and denies in part the petition.[1]

## I. BACKGROUND

James Grant is a citizen of Honduras. Dkt. No. 8 at 2. He "was admitted to the United States at Houston, Texas on July 9, 2024, as a H2B Temporary Non-Agricultural Worker with authorization to remain in the United States for a temporary period not to exceed November 11, 2024." *Id*. On January 3, 2025, he married a United States citizen in Anchorage, Alaska. Dkt. No. 17 at 17. The next year, on March 17, 2026, he was charged in an Alaska state court with three

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

criminal offenses: (1) "Reckless Endangerment [AS11.41.250]"; (2) "Misconduct Involving Weapons in the Second Degree [AS 11.61.195(a)(3)(B)]"; and (3) "Tampering with Physical Evidence [AS11.56.610(a)(1)]." Dkt. No. 8 at 2. On March 18, 2026, he was released from state custody and detained by U.S. Immigration and Customs Enforcement ("ICE") in Anchorage, Alaska. Dkt. No. 8 at 2. ICE served him with a Warrant of Arrest, Form I-200; a Notice of Custody Determination, Form I-286, and a Notice to Appear, Form I-862, charging him as removable under Section 237(a)(1)(B) of the Immigration and Nationality Act (8 U.S.C. § 1227(a)(1)(B)) "in that after admission [he] remained in the United States for a time longer than permitted." No. 8 at 2.

On March 21, 2026, ICE transferred James Grant to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. *Id.* On April 28, 2026, the Anchorage District Court dismissed the charges against him. *Id.* On May 13, 2026, Immigration Judge ("IJ") John Odell denied his request for bond, finding that he "had failed to show that he was not a danger to community." *Id.* at 3. The same day, at his merits hearing, James Grant "waived his right to file [an] Application for Asylum and Withholding of Removal" and instead filed an Adjustment of Status Application, Form 1-485, "based on an approved Petition by an Alien Relative," Form I-130. Dkt. No. 8 at 3. On July 6, 2026, an IJ denied his request for adjustment of status and ordered him removed to Honduras. *Id*. On July 21, 2026, James Grant appealed the removal decision to the Board of Immigration Appeals ("BIA"), where it remains pending. Dkt. No. 8 at 3. He did not appeal Judge Odell's bond decision. Dkt. No. 4 at 6.

On July 27, 2026, James Grant filed a petition for a writ of habeas corpus. Dkt. No. 4. On August 10, 2026, Respondents[2] filed a return, Dkt. No. 7, which James Grant averred he did not

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir.

receive until August 24, 2026, Dkt. No. 10 at 1. The Court granted him additional time to file his traverse, Dkt. No. 11, which he did on September 8, 2026, Dkt. No. 12. On September 23, 2026, the Court ordered Respondents to provide "any transcript or contemporaneous recording of the bond hearing," "all records submitted in connection with the bond hearing," "the Immigration Judge's written decision (if any)," and a "supplemental brief of up to 1,050 words explaining (a) why they did not submit such evidence with their return, and (b) whether the records alter any of the arguments they made in their return." Dkt. No. 14. On September 30, 2026, Respondents filed a supplemental response, submitted an Administrative Record consisting of the materials presented to Judge Odell at the bond hearing,[3] and confirmed that there is no audio recording, transcript, or written record of the bond hearing. Dkt. No. 15–17. James Grant filed a supplemental reply. Dkt. No. 18.[4]

## II. DISCUSSION

In his habeas petition, James Grant alleges that Judge Odell "failed to properly apply factors required by the BIA's precedent decisions *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) and *Matter of Patel*, 15 I&N Dec. 666, 666-67 (BIA 1976)." Dkt. No. 4 at 2–3. He contends that the bond denial constitutes an abuse of discretion because Judge Odell did not "rationally apply the governing legal standard," and his cited reasons "conflict with the record" and "do not

2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] Respondents attach several exhibits to the declaration of Lawrence Van Daley, but that declaration is not certified as true under penalty of perjury as required by 28 U.S.C. § 1746. Dkt. Nos. 9–9-5. Accordingly, the Court does not consider the declaration or any of the attached exhibits that the declaration purports to authenticate. However, even if the Court considered that declaration and exhibits, the outcome would be the same. The Court also notes that several pages of the Administrative Record, *id.* at 62–69, are totally redacted; Respondents did not indicate what categories of information are redacted or the reason for the redaction.

[4] He also filed a motion for leave to exceed the word limit. Dkt. No. 19. The Court denies the motion because it previously ordered that "Petitioner may file a response of up to 1,050 words to any evidence produced or new argument offered by Respondents," Dkt. No. 14, but his supplemental reply brief consists largely of arguments he made previously in his filings, rather than a response to new evidence. Even if the Court were to consider the entirety of his supplemental reply, it would reach the same result.

outweigh the significant evidence" in his favor. *Id.* at 3; *see* Dkt. No. 12 at 5–8. He also challenges the IJ's bond denial under the Administrative Procedure Act ("APA"). Dkt. No. 4 at 9–14. He requests immediate release and injunctive relief preventing Respondents from re-detaining him "unless his re-detention is ordered at a custody hearing before a neutral arbiter in which he is determined to be a flight risk or danger to the community in compliance with governing law and due process[.]" *Id.* at 14. Alternatively, he seeks an order of release on a $500 bond, or a new bond hearing that "complies with governing law and due process[.]" *Id.* at 15.

Respondents contend that James Grant's petition should be denied for failure to exhaust administrative remedies (namely, for failure to appeal the bond denial decision to the BIA), and that even if the Court reaches the merits, Judge Odell's denial of bond was lawful and the APA claims fail. Dkt. No. 7 at 5–10.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and

flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion Is Not Required**

As noted above, James Grant contends that prudential exhaustion "should be waived because administrative remedies are inadequate and exhaustion would be futile." Dkt. No. 4 at 7. He contends he "will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim." *Id.* at 7–8; *see* Dkt. No. 12 at 4 (citing data indicating the severity of the BIA's backlogged case load). He argues that the *Puga* factors support waiving prudential exhaustion, Dkt. No. 12 at 2–4, emphasizing that he "supports his family financially and emotionally," his detention has caused "an immense burden on his family," and he "will suffer irreparable injury while waiting for an appeal to be decided before the Board," Dkt. No. 4 at 3, 8 (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004)). Respondents argue that all of the *Puga* factors weigh in favor of requiring exhaustion, and that requiring James Grant to exhaust his administrative remedies would "allow

the [IJ] to issue a bond memorandum" to better explain his findings and would not cause "undue delay." Dkt. No. 7 at 5–7.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga*, 488 F.3d at 815). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing*, 370 F.3d at 1000.

In light of the unique facts of this case, the Court exercises its discretion to not require exhaustion. Specifically, the IJ's decision—and the utter lack of rationale justifying that decision, as discussed below—"is so plainly [constitutionally] inadequate that BIA expertise is not necessary to generate a proper record or reach a proper decision." *Cruz-Acevedo v. Scott*, No. 2:26-CV-01654-LK, 2026 WL 1623154, at *4 (W.D. Wash. June 5, 2026). And unless most IJs begin issuing decisions with similarly deficient reasoning, there is no risk of encouraging deliberate bypass of the administrative scheme. *Id.*

**C. The IJ Abused His Discretion**

Respondents contend that James Grant has not identified valid constitutional or legal errors resulting from his bond hearing because Judge Odell had no obligation to record the bond hearing and, in any event, he did not abuse his discretion because James Grant's criminal history supports the finding that he was a danger to the community. Dkt. No. 7 at 6–8. James Grant disagrees, arguing that the bond denial was an abuse of discretion because Judge Odell "failed to apply the full set of *Matter of Guerra* factors" and "his arrest or charge is insufficient for the Immigration Judge to find that [he] was convicted, and therefore cannot form the basis of a denial of release on bond[.]" Dkt. No. 4 at 13. He avers that he submitted evidence to Judge Odell during his bond hearing, including proof of his dismissed state criminal charges, Alaskan marriage certificate, birth certificate of his child, tax returns, and several support letters, and that Judge Odell determined dangerousness "based largely on the dismissed" state charges. *Id.* at 5–6.

The Court generally does not have jurisdiction to review discretionary bond decisions. 8 U.S.C. § 1226(e). However, Section 1226(e) does not "strip federal courts of traditional habeas jurisdiction" to adjudicate "constitutional claims or questions of law regarding immigration detention under § 1226." *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (citation modified). While factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). In other words, Section 1226(e) "precludes federal courts from reviewing 'underlying factual determinations'" such as "'credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides,'" but it does not bar review of pure legal questions or mixed questions of law and fact, "even when [the latter]

are primarily factual[.]" *Id.* at 782–84 (quoting *Wilkinson*, 601 U.S. at 225). Such determinations are reviewed for an abuse of discretion. *Martinez*, 124 F.4th at 784. Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Id.* at 785 (citation modified).

1. Judge Odell's Decision

To determine whether a noncitizen is a danger to the community or a risk of flight, an IJ weighs any or all of nine non-exhaustive factors under BIA precedent:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). An IJ's application of the above standard is a reviewable mixed question of fact and law, even though what constitutes a risk of flight or a danger to the community "is malleable and involves agency discretion," because federal courts can still "assess whether an IJ correctly applied the [legal] standard to a given set of facts." *Id.* (quoting *Wilkinson*, 601 U.S. at 221); *see also Soriano*, 830 F. Supp. 3d at 1077–78 (finding jurisdiction to review IJ's bond denial based on flight risk finding); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026) (same).

Accordingly, James Grant's allegation in his habeas petition—that the IJ abused his discretion when he determined that James Grant was a danger to the community—presents a mixed question of fact and law that the Court has jurisdiction to review.

2. Abuse of Discretion

Even assuming without deciding that the noncitizen must bear the burden of proof by a preponderance of the evidence at his bond hearing, *see Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *8–9 (W.D. Wash. Feb. 23, 2026), the Court finds that Judge Odell abused his discretion in this case. *See Martinez*, 124 F.4th at 779.

The record before the Court is wholly devoid of any indication that Judge Odell considered any of the evidence submitted by James Grant in relation to the bond hearing[5] or weighed the relevant *Guerra* factors in making the dangerousness determination. In considering whether a noncitizen is a danger, IJs may consider the noncitizen's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses," even if "serious criminal activity . . . had not resulted in a conviction"—but the evidence supporting that criminal record must be "probative and specific." *In Re Guerra*, 24 I. & N. Dec. 37, 40–41 (BIA 2006). Here, the bond denial decision consists solely of a checkbox form in which "Respondent has failed to show that he is not a Danger to Community" is checked. Dkt. No. 17 at 98. The form order does not mention the *Guerra* factors, much less consider them, and there is no evidence that Judge Odell explained his reasoning or weighed any factor other than James Grant's criminal record at the hearing. Due process requires the IJ to set forth his reasoning at the time of the bond hearing. *Garcia-Merino v. Hernandez*, No. 26-CV-1911, 2026 WL 2137819, at *4 (W.D. Wash. July 24, 2026). Although Respondents opine that Judge Odell's finding that James Grant "failed to show he was not a danger to the community" is "supported by the record," Dkt. No. 7 at

[5] James Grant submitted a memorandum in support of his motion for bond redetermination and exhibits including proof that his criminal charges were dismissed, a letter from a public defender explaining why his charges were dismissed, several police reports detailing the circumstances of his March 2026 arrest, a letter written by James Grant explaining the circumstances of his arrest, an account by his wife attesting to the circumstances of his arrest, records related to his requests for adjustment in status, his marriage certificate, his adoption record for his daughter, and letters of support. Dkt. No. 17 at 10–31, 41–61, 70–97. The Department of Homeland Security submitted the I-213 Form, "Record of Deportable/Inadmissible Alien." *Id.* at 36–40.

8, they cannot show that Judge Odell meaningfully engaged with contrary evidence and performed the required weighing under *Guerra* at the bond hearing.

For these reasons, Judge Odell failed to accord James Grant the process due to him, abusing his discretion and violating his Fifth Amendment rights. *See Cardoza-Garcia v. Hernandez*, No. 2:26-cv-02573-JHC, 2026 WL 2294541, at *4 (W.D. Wash. Aug. 10, 2026) (finding that the IJ abused his discretion in finding that petitioner was a flight risk when he failed to apply the *Guerra* factors, meaningfully engage with petitioner's evidence, or explain why, in light of that evidence, no amount of bail would be sufficient).

**D. Remedy**

Having found a due process violation, the Court considers the appropriate remedy. James Grant requests immediate release, or alternatively, "a new bond hearing before an immigration judge that complies with governing law and due process[.]" Dkt. No. 4 at 14–15. Respondents argue that James Grant is not entitled to any of the forms of relief he seeks. Dkt. No. 7 at 9–10.

The record before the Court does not indicate that Judge Odell set forth his reasoning at the time of the bond hearing, as required to provide sufficient due process. At the same time, James Grant was charged with serious crimes involving a gun, and the circumstances surrounding his arrest and dismissed charges, along with the other evidence submitted for the hearing, should be weighed under *Guerra*. Accordingly, the Court orders a second bond hearing.

**E. The Court Otherwise Denies Injunctive Relief**

James Grant also requests an order preventing Respondents from re-detaining him "unless his re-detention is ordered at a custody hearing before a neutral arbiter in which he is determined to be a flight risk or danger to the community in compliance with governing law and due process[.]" Dkt. No. 4 at 14. Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to

entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Even assuming without deciding that the Court has authority to grant injunctive relief in this case, James Grant's petition does not allege that his re-detention is likely. *See generally* Dkt. No. 4. And without argument or evidence that his unlawful re-detention is likely to occur, his request constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings*, 316 F.3d at 897 (citation modified); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his request for a permanent injunction is denied.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the petition for a writ of habeas corpus, Dkt. No. 4, and ORDERS as follows:

1. Respondents must provide James Grant with a bond hearing before an immigration judge within seven days of the date of this Order unless James Grant requests an extension of that deadline; any extensions successfully requested by James Grant toll the seven-day period. Respondents must ensure that the bond hearing is recorded.

2. If a bond hearing is not provided within seven days of the date of this Order and James Grant has not requested an extension of that deadline, he shall be released from ICE custody within 24 hours on appropriate conditions of supervision, taking into account his ability to pay a bond.

3. Respondents must file a Status Report with the Court either confirming that James Grant received a bond hearing—and the results of that hearing—or otherwise confirming his release by October 26, 2026.

Dated this 16th day of October, 2026.

Lauren King
United States District Judge